304 So.2d 194

**Hilton R. PARRISH**

v.

**Wamon D. FAULK et al., as County Commissioners of Houston County, Alabama, and R. J. Stembridge, Judge of Probate of Houston County, Alabama.**

**SC 969.**

Supreme Court of Alabama.

Dec. 5, 1974.

J. Hubert Farmer, Dothan, for appellant.

Wm. G. Hause, Dothan, for appellees Wamon D. Faulk and Mark F. Tatum.

Jere C. Segrest, Dothan, for appellees A. A. Middleton, Harlie Halstead, Ed Tolar, Dorman Frith and Jack Wise.

COLEMAN, Justice.

Plaintiff appeals from an adverse decree in action for declaratory judgment.

Plaintiff seeks to have Act No. 779, approved September 5, 1973, declared void because it is a local act and was not passed in accord with the provisions of Section 106 of the Constitution of 1901.

Act No. 779 creates the office of commissioner of licenses in Houston County and provides for the method of issuing all licenses except marriage licenses.

As here pertinent, Section 106 provides as follows:

"Sec. 106. No special, private, or local law shall be passed . . . unless notice of the intention to apply therefor shall have been published . . . which notice shall state the substance of the proposed law . . . The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."

In the Journal of the House of Representatives, in the published notice, Section 2 of the proposed act recites as follows:

"Section 2. There is hereby created the office of commissioner of licenses who shall be appointed by the chairman or president of the county governing body, county revenue commissioner and the judge of probate, or a majority of them who shall constitute a board of appointment for such purpose, such officer shall hold office at the pleasure of the appointing board and any vacancy occurring shall be filled by the appointing board or a majority of them. The salary of the commissioner of licenses shall be fixed by the appointing board at $10,500.00 annually and shall be payable in equal monthly installments from the general funds of the county." House Journal, 1973, Vol. 2, page 2039.

In the act as passed by the Legislature and approved by the Governor, Section 2 recites as follows:

"Section 2. There is hereby created the office of commissioner of licenses who shall be elected at the next general election for any state officers held after the effective date of this act; and shall take office for a term of four years on the first Monday after the second Tuesday in January next succeeding his election, and upon taking office shall have access to all licenses except marriage licenses. The salary of the commissioner of licenses shall be fixed by the appointing board at $10,500.00 annually and shall be payable in equal monthly installments from the general funds of the county." Act No. 779, Acts of Alabama, 1973, Vol. II, at page 1190.

The issue presented is whether Act No. 779 violates Section 106 of the Constitution because of the variance between Section 2 of the act as advertised and Section 2 of the act as passed.

The trial court held that the act did not violate Section 106, and plaintiff appeals.

It is apparent that the version of Section 2 in the published notice informed the public that the holder of the office of commissioner of licenses would be chosen and appointed by the appointing board named in Section 2, and the commissioner of licenses so chosen and appointed would hold office " . . . at the pleasure of the appointing board . . ."

In the act as passed and approved, it is provided that the commissioner of licenses " . . . shall be elected at the next general election . . . and shall take office for a term of four years . . ." beginning on a specified day.

Between Section 2 as published and Section 2 as passed, there is a difference in the authority by whom the office of commissioner of licenses is to be filled and in the length of time the commissioner is to hold the office. In the published version, he is to be chosen by the appointing board composed of three named officials and is to hold office for an unspecified time at the pleasure of the appointing board. In the bill as passed, he is to be elected at the next general election for state officers. The act does not specify by whom he is to be elected. It appears to be assumed by the parties that the commissioner of licenses would be elected by the qualified voters of Houston County, but the act does not so specify. The act refers to the " . . . next general election for any state officers . . ."

Between the published and enacted versions of Section 2, there is a change in the length of time the commissioner of licenses is to hold office. In the published notice, he is to hold office for an unspecified term at the pleasure of the appointing board.

In the act as passed, he is to hold office for a fixed term of four years.

In the published version of Section 2, any vacancy in the office is to be filled by the appointing board. In the enacted version of Section 2, filling a vacancy is not mentioned.

Of less significance perhaps is the difference in the published version and the enacted version with respect to fixing the salary of the commissioner. Both versions provide that the salary of the commisioner of licenses shall be fixed " . . . by the appointing board . . ." at $10,500.-00 annually. The published version of Section 2 names three officers who are to constitute the appointing board, but the enacted version of Section 2 does not name any officers or persons who are to constitute the appointing board. A hiatus is thus created.

Plaintiff contends that the differences between the published and enacted provisions of Section 2 are substantial and render the act unconstitutional. Defendants contend that the differences are not such a material variance as to violate Section 106 of the Constitution.

In brief, appellees cite State v. Brooks, 241 Ala. 55, 1 So.2d 370, wherein this court held that Section 106 of the Constitution was violated in the passage of a local act in that the published notice of the act failed to give notice of its substance. In *Brooks,* this court cited Wallace v. Board of Revenue of Jefferson County, 140 Ala. 491, 37 So. 321, wherein in 1903, and for the first time, Section 106 was construed. In *Wallace,* this court, in considering the notice required by Section 106, among other things, said:

"This notice, as is seen, is required not only to be published for the length of time, and in the manner specified, and proof thereof made to each house of the Legislature, and spread upon the journals, but it is also required to *'state the substance of the proposed law.'*

" . . .

**404**

". . . It was always supposed that the people to be immediately affected by local legislation, ought to have notice of an intention on the part of any one desiring to apply to the Legislature for such legislation, which was often sought for private and improper ends, and not for the good of the people at large. Any notice, therefore, which falls short of advising the public of the substance of such legislation, would be deceptive or misleading, depriving those opposed to it, of a fair opportunity to protest against and oppose its enactment.

"The word 'substance' as employed in the section cannot be said to be synonymous with 'subject' or mere purpose. It means 'the essential or material part, essence, abstract, compendium, meaning.' Worcester's Dict.

"Referring to the debate in the constitutional convention on the section,—as is proper for the sake of interpretation,—it appears that before the motion was put to adopt it, a member arose and stated, 'Before that motion is put, I would like to ask the chairman of the committee, if the substance of the proposed law means that the law itself, in substance, shall be published, or that the purpose of the proposed law be published. Would it not be better to strike out "the substance," and insert "the purpose" '?

"The chairman replied: 'The committee did not desire that the community should be misled as to the purpose of the law, and sometimes the caption of the law is very misleading, and it was to obviate advantage being taken of the public in the matter, that it was written as it is.' The section was then adopted. Official Report, 41st day. From this it would seem, that it was intended that the essential or material part, the essence, the meaning or an abstract or compendium of the law, was to be given, and not its mere purpose or subject.

"The title of a bill may give notice of its substance, but most often it does not. The title may be very general, and when the subject is expressed in general terms, everything that is referable and cognate to the subject expressed, may be included in the bill, without offense to that provision which requires that every law shall contain but one subject which shall be clearly expressed in the title. The subject, therefore, may be expressed in the title of a bill, but the substance is not required there to appear. In other words, there is a wide difference in legislative language, in the meaning of the words, substance and subject, when applied to a bill. In Falconer v. Robinson, 46 Ala. [340] 347, the distinction between the two words was well pointed out by *Peck,* C. J., in respect to the title of an act to authorize the governor to fill vacancies in certain county offices, when he said, 'The subject of this law is, by whom vacancies in certain county offices shall be filled. The title clearly expresses this: they are to be filled by the governor. But, it is said, you can not tell by this title what particular county offices are to be filled by him. This is true, but the title is not the place for that to be expressed; that is a part of the matter and substance of the law, and the body of the law, and not the title, is the appropriate place to express it. . . .' " (140 Ala. at 501, 502, 503, 37 So.2d at 323.)

In State v. Allen, 219 Ala. 590, 123 So. 36, this court held invalid a local act wherein the act as passed was different in several respects from the act as published. This court said:

"Section 106 of the Constitution has been considered many times by our courts, and four well-defined canons of construction have been firmly settled. They are as follows: '(1) That the "substance" of the proposed law means, not merely the *subject* of it, but an intelligible abstract or synopsis of its material and substantial elements (Wallace v. Board of Revenue, supra [140 Ala. 491, 37 So. 321]; Law v. State, supra, [142

Ala. 62, 38 So. 798]); (2) the substance of the act may be sufficiently stated without stating the details which are subsidiary to the stated elements (City of Uniontown v. State ex rel. Glass, 145 Ala. 471, 39 So. 814, 8 Ann.Cas. 320; Law v. State, supra; Mayor, etc., of Ensley v. Cohn, supra, [149 Ala. 316, 42 So. 827]); and (3) the Legislature is not inhibited from shaping up and working out the details of local legislation by amending bills when presented for consideration and passage.' (4) 'The substance' of the proposed act, 'as advertised cannot * * * be materially changed or contradicted.' First National Bank v. Smith, 217 Ala. 482, 117 So. 38; State ex rel. Hanna v. Tunstall, 145 Ala. 477, 482, 40 So. 135.

"We are concerned here with the third and fourth canons of construction stated above, and their application to the facts of this case. We are confronted with the following questions, therefore: What features of the act constitute its *substance* within the meaning of section 106, and whether there has been a *material* change in any portion thereof from the publication.

" . . .

"It is well understood that the Legislature has the power 'to shape up and work out the details of local legislation,' and that all such details need not be embraced in the published notice. McGehee v. State, supra; Polytinsky v. Johnston, supra; First Nat. Bank v. Smith, supra. But where such principle has been applied the substance of the legislation was published in general terms. Where, instead of the publication being in general terms, the details of the proposed act are published, this principle has not been given effect.

" . . . No statement of the substance could be made which would be more narrow and restrictive than an exact copy of the entire proposed act, though it is a compliance with section 106 of the Constitution (Jacobs v. State, 144 Ala. 98, 40 So. 572). It is said that the purpose of stating the subject in the title is 'to prevent deception by the inclusion in the bill of matters incongruous with the title' (Ex parte Pollard, 40 Ala. [77] 99). And 'while the requirements [of sections 45 and 106] are not identical, yet their objects are, and their similarity suggests the same general line of reasoning in constructing them.' State ex rel. Hanna v. Tunstall, 145 Ala. 477, 481, 40 So. 135, 137.

"To accomplish these objects section 106 of the Constitution requires that the substance of the act must be published in advance. It cannot have the desired effect if the publication states details of substantive features different materially from the act as passed. If the details are not published but only the general nature of its substantive features, the public is put upon inquiry as to such details, and bound by a failure to inform itself, continuing through such changes and amendments as may stay within such substantive features as published. But if the publication gives details, the public need not pursue the inquiry further in respect to such details; for the information is complete, and it has the constitutional right to assume that such details will not be materially changed throughout the journey of the bill to its final passage and approval.

"While in the instant case it may be said that some of the differences between the act as passed and as published are of such unimportant detail as not to be materially misleading, we think some of them are not subject to such comment. State v. Lea, 211 Ala. 68, 99 So. 170; Head v. Hood, 214 Ala. 353, 107 So. 854. On the other hand, considering them altogether, we have concluded that some of the substantial features of the published act are materially different from what they are in the act as passed. We are not concerned with the advisability of any of such changes. We are

only called upon to determine whether they are materially variant from the substantial features of the bill as published. . . . " (219 Ala. at 591, 592, 593, 123 So. at 37)

In *Allen,* in the published draft, one of the judges of the municipal court was named as judge of the new court, and his successors were to be elected by the judges of the circuit court. The act as passed provided that the judge and his successors shall be appointed by the governor. In respect to such difference, *Allen* has some similarity to the instant case where the authority to fill the office in the published notice is placed in an appointing board, and in the act as passed, the authority to fill the office is placed in those voting at the general election.

In 1920, in Leonard v. Lyons, 204 Ala. 615, 87 So. 99, this court considered the constitutionality of Act No. 298, Local Acts of 1919, page 115, which established a Board of Revenue for Shelby County and abolished the court of county commissioners which had been established by an earlier act, No. 134, Local Acts of 1911, page 154. Section 2 of the 1911 act provided that the president and the four members of the board of revenue shall be appointed by the governor. The 1919 act amended Section 2 to provide that the president of the board shall be elected by the qualified electors of the county and one member shall be elected by the qualified voters of each of four districts as then constituted by authority of a still earlier act of 1890–91, Section 1, page 354.

The appellant contended that the act of 1919 was passed in violation of Section 106 of the Constitution because the published notice of the act was not sufficient in the particular next mentioned.

As here pertinent the published notice recites:

" . . . said amendment making the president and members of said board elective by the qualified voters of said county . . . ." Senate Journal, 1919, Vol. I, page 1058.

As stated above, the 1919 act as passed provided that the president of the board be elected by the electors of the county and one member of the board be elected by the voters of each of the four districts.

With one justice dissenting, this court held the 1919 act constitutional and said:

"The majority of the court . . . are of the opinion that the notice of the intention to apply for the passage of the act was a sufficient compliance with section 106 of the Constitution. The fact that it purported to make the commissioners of the county elective did not render the same insufficient, because the act makes some of the members elective from districts instead of from the county at large." (204 Ala. at 616, 87 So. at 99.)

In 1945, on inquiry from the governor, the justices of this court expressed an advisory opinion with respect to a local act abolishing a court of county commissioners and creating a board of revenue as the county governing body. The opinion of the justices said that the act was unconstitutional because it is in violation of Section 106 of the Constitution. The justices said:

"The notice published in connection with the act to which you refer merely states that the proposed statute will establish a Board of Revenue to be composed of five members, designates the manner of appointing the first Board and provides for the election of such members at the expiration of the term of office of the first Board. The act itself provides that such members shall be elected from the county at large. Since 1879 (Acts of Alabama, 1878–1879, page 208), the members of the Commissioners Court of Jackson County have been elected from four districts of the county, one commissioner for each district. We

consider that the failure of the published notice to give the express information that the members of the Board of Revenue were to be elected from the county at large was an omission of a matter of substance. There was a material change in the manner in which Jackson County would elect its governing body." In re Opinion of the Justices, 246 Ala. 518, 520, 21 So.2d 238, 239.

■ The issue in the instant case is whether the difference in the authority to fill the office as published, and in the act as passed, is a matter of substance. None of the cases cited or found are directly in point.

■ The designation of the authority to select the license commissioner and to fill the office is a matter which rests in the discretion of the Legislature and not in the judgment of this court. This court does have the duty, however, to determine whether the published notice stated the substance of the act as passed.

The published notice informed the public that the office would be filled by an appointing board composed of three designated officials. The act as passed provided that the office would be filled by qualified electors, presumably the voters of Houston County. The term of office stated in the published notice was at the pleasure of the appointing board. The term of office stated in the act as passed is a fixed term of four years.

Consider this. What would the situation be if, in the published notice, it had been provided that the commissioner would be elected by the qualified voters of the county for a term of four years, and, in the act as passed, it was provided that the commissioner would be appointed by a board composed of the Chairman of the County Governing Body, the County Revenue Commissioner, and the Judge of Probate, and hold office at the pleasure of the appointing board? In the supposed situation, could it be said that the public had not been misled into thinking that the qualified voters would fill the office of license commissioner, and had acquiesced in passage of the act without investigation or protest? Could it be said that the designation of the authority to fill the office of license commissioner by the qualified voters was a mere detail and not a matter of substance?

If changing the authority for filling the office of license commissioner from an appointing board to election by the qualified voters (which is the change made in the instant case) is a mere matter of detail which need not conform to the published notice, then the reverse would be true and changing the authority for filling the office from election by the qualified voters to an appointing board would also be a mere matter of detail which need not conform to the published notice. If publishing notice that the authority will be a three-man appointing board and actually passing a law providing that the authority will be the qualified voters does not mislead and deceive the interested citizens of the county, then publishing notice that the authority to fill the office will be the qualified voters, and actually passing a law providing that the authority shall be a three-man appointing board, would not mislead and deceive the citizens of the county. It would be difficult to sustain the latter proposition that the public had not been deceived. The citizen would be likely to say, "They deceived me because they told me that I would be able to vote for the license commissioner but changed the law so that I cannot vote for him. They misled me because they said the office would be filled by election and they changed the bill so that he would be appointed and took away my right to vote for him or against him." It is not likely that many voters would regard the loss of their anticipated right to vote for the commissioner as immaterial.

We are of opinion that the citizens of the county would have been misled in a

matter of substance if the notice had informed them that the office of license commissioner would be filled by election by the qualified voters, and the act as passed had provided that the office would be filled by appointment by the appointing board composed of three named officials. The converse is also true where the notice has informed the public that the office would be filled by the appointing board, and the act as passed has provided that the office shall be filled by election by the qualified voters.

In brief, the defendants say:

"In this case presently before the Court, the variance from the proposed Act to the Act as adopted is a change of form only which would materially improve and render said Act more acceptable to the general public.

"This country, being founded on the elective democratic process rather than having public officials appointed by boards, generally would necessitate such change of form. All public officials should be accountable to the electorate rather than to several individuals comprising an appointed board.

"The wisdom of this change is manifest, and such change, in our opinion, is not substantial so as to render the Act unconstitutional."

We do not question the correctness of appellees' argument that filling an office by election by the qualified voters is better for the public interest than filling an office by appointment by one or a few persons, but that is not the question before us. We are persuaded that the filling of the office of license commissioner of Houston County is important, and that the authority designated to fill the office is a matter of substance and not merely a detail which can be changed from the authority designated in the published notice to a different authority not designated in the published notice.

Accordingly, we hold that Act No. 779 was not passed in compliance with Section 106 of the Constitution.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, McCALL, FAULKNER and JONES, JJ., concur.

MADDOX, J., dissents.