333 So.2d 136 (1976)
Raymond BELCHER
v.
Hiram Y. McKINNEY et al., as Members of the Personnel Board of Jefferson County, Alabama, and James W. Fields, as Acting Director of Personnel of Jefferson County, Alabama.
SC 1665.
Supreme Court of Alabama.
May 21, 1976.
Rehearing Denied June 18, 1976.
*138 James M. Fullan, Jr., Birmingham, for appellant.
W. Gerald Stone, Bessemer, for appellees.
SHORES, Justice.
Belcher, chief deputy sheriff in Jefferson County, filed a bill for declaratory judgment and mandatory injunction seeking to uphold the constitutionality of Act No. 389, Acts of Alabama 1975, approved September 18, 1975, and seeking to require the Personnel Board of Jefferson County to comply with that act. The trial court dismissed the complaint after finding Act No. 389 to be unconstitutional. Belcher appealed.
The Act in question provides compensation for the chief deputy sheriff in counties having populations of "... 600,000 or more, according to the most recent federal decennial census." The compensation is to be no less "... than three pay grades above the highest pay grade, including educational incentive pay, in the classified service of the county of the position next below the position of chief deputy sheriff, provided such chief deputy sheriff holds a law degree." The Act operates retroactively to January 1, 1975.
The trial court concluded:
(1) The Act, § 2, contains a double classificationproviding one pay rate for chief deputies who hold a law degree and another for those chief deputies who do not (in those counties with the requisite population) ;
(2) that Act No. 389 is a local act and was not advertised pursuant to the requirements of § 106, Article 4, of the Alabama Constitution;
(3) that the population classification bore no relation to the purpose of the Act, i. e., to reward a chief deputy for holding a law degree;
(4) that a chief deputy is not required in Jefferson County, "nor does it appear that one would be required ..." in those counties which may come within the classification in the future;
(5) that the chief deputy sheriff is not a public officer, that this is merely a "position" and that the "... Civil Service Law, Section 656, Appendix, Code of Alabama, Recompiled 1958, requires the Director of Personnel, subject to the approval of the Personnel Board, to grade, classify and establish salaries ..." in such position;
(6) that the Act would repeal the Civil Service Law, which the legislature clearly did not intend to do;
(7) that the Act is void for inconsistency, vagueness and uncertaintyit provides for but does not define educational incentive pay, and it leaves doubt as to whether *139 a law degree must be from an accredited or unaccredited law school; and
(8) the provisions for retroactive pay is violative of Sections 68 and 94 of the Alabama Constitution.
The appellant submits:
(1) That a county of over 600,000 in population has particularly severe crime problems by virtue of its large population;
(2) that, therefore, it is especially desirable to have a chief deputy in such a county with a law degree to aid in solving the problems peculiar to such a county;
(3) that the double classification condemned in Jefferson County Board of Health v. City of Bessemer, 293 Ala. 237, 301 So.2d 551 (1974), refers to double classification only in terms of population;
(4) that any problem of conflict with Act No. 389 and the Civil Service Law is taken care of by Section 4 of Act No. 389:
"All laws or parts of laws which conflict with this act are hereby repealed.";
(5) that the provision providing for educational incentive pay is clear;
(6) that the question of whether the law school conferring the degree is accredited or not is immaterial; and
(7) that Amendment II to the Alabama Constitution permits retroactive pay in this instance.
Is Act 389 a general law or a local law as defined by Section 110 of the Alabama Constitution? If the Act is local then it is void, as the appellant concedes, since Section 106 of the Constitution was not complied with.
Reynolds v. Collier, 204 Ala. 38, 85 So. 465 (1920), set out three tests that an act, based on a population classification, must meet to be a general act: (1) There must be a substantial difference in population; (2) the classification must be made in good faith; and (3) the classification must be reasonably related to the purpose sought to be achieved by the act. The first requirement operates only in the context of a classification that is not openended. Opinion of the Justices, 263 Ala. 174, 81 So.2d 699 (1955). In applying the second part of the test, we must "... accord to the lawmaking body of the state government sincerity of purpose and fairness in dealing with the people of the state." Wages v. State, 225 Ala. 2, 4, 141 So. 707, 708 (1932). We find nothing to suggest that the classification in this act was not made in good faith, nor that the legislature was not sincere in its purpose in passing this act. The third requirement of Reynolds is a central issue in this case.
The appellees insist that no relationship exists between the population criteria set out in this act and the purpose of the act. We cannot agree. Although our law requires state-wide uniformity in substantive criminal law, census legislation concerning the administration of criminal justice has been upheld. Dixon v. State, 27 Ala.App. 64, 167 So. 340, cert denied, 232 Ala. 150, 167 So. 349 (1936). The Dixon opinion adopted the opinion of the trial court in that case, which observed:
"`... It is a fact known of all men who have reached their maturity and who have enjoyed the general experience common to mankind that populous centers are the central nurseries and hotbeds of crime....'" (27 Ala. App. at 68, 167 So. at 343)
Concededly, as we noted in Jefferson County Board of Health v. City of Bessemer, supra, 293 Ala. at 242, 301 So.2d at 555, "... our holdings do not present an altogether clear standard for determining whether a logical relationship exists between the classification employed and the purposes of the act," but can we say that the act in the instant case is not based upon a rational relationship? See Dearborn v. Johnson, 234 Ala. 84, 88, 173 *140 So. 864 (1937). We think not. Of course, we are aided by the presumption that the legislature made an informed judgment as to the need in employing this classification. Wages v. State, supra. We hold that the requirements set out in Reynolds have been met.
Nevertheless, there may be, and we are urged to find, other infirmities which may be fatal to the statute. The appellees observe that Act 389 applies only to "`counties having populations of 600,000 or more according to the most recent federal decennial census ...,'" which forever limits its application to Jefferson County. We may, of course, take judicial notice of the fact that the Act is presently applicable only to Jefferson County. Masters v. Pruce, 290 Ala. 56, 274 So.2d 33 (1973). However, this alone does not compel the conclusion that the Act is a local one. Brittain v. Weatherly, 281 Ala. 683, 207 So.2d 667 (1968). Still, for the Act to be a "general" law it must have application to a shifting class. In other words, there must exist a possibility of application to other counties which may come within the classification fixed by the statute. Ostensibly, a statute which is tied to a specific census would prevent its prospective application. This court, however, has interpreted a phrase similar to the one in Act 389 "... as having a prospective and progressive application, and not confined to a status existing at the time of the passage of the Act." State v. Baumhauer, 244 Ala. 71, 72, 12 So.2d 342 (1943). This interpretation is conclusive in the instant case; thus, Act 389 will apply to counties subsequently falling within the population classification provided in the Act.
The appellees also argue that the Act provides for a double classification. If the chief deputy sheriff in a qualifying county has a law degree, the Act fixes his rate of compensation; if he does not, the Act provides "... his compensation shall be as set for the position of chief deputy sheriff in the classified service of the county." A double classification per se is not necessarily fatal as both conditions may be reasonably related to the objective of the statute. Board of Revenue of Jefferson County v. Huey, 195 Ala. 83, 70 So. 744 (1916). The danger in the use of such a classification is that it may prevent the prospective application of the Act or may destroy the reasonable relationship with its subject matter. Jefferson County Board of Health v. City of Bessemer, supra. The question in the instant case, however, is whether the Act has a double classification at all. The second classification, as defined by the appellees, adds nothing to existing law. The rate of compensation for deputy sheriffs is already fixed by the personnel board; the statute merely acknowledges this fact and provides for compensation for a chief deputy sheriff holding a law degree. As we read the Act, it contains only one classification. But, assuming there are two in Act 389, we cannot say that both were not reasonably related to the purpose of the statuteto provide for the more efficient administration of justice in the large urban areas. We find no double classification that would render the statute constitutionally infirm.
The appellees next contend that Act 389 is in conflict with the Civil Service Law of Jefferson County. They point out that the Act establishes compensation for the "position" of chief deputy sheriff and that the Civil Service Law requires the Director of Personnel, subject to the approval of the Personnel Board, to establish salaries for positions in the classified service. They assert, therefore, that if the Board's right to set compensation for this position was repealed by Act 389, the right to set compensation for all positions must be repealed, effectively repealing the entire Civil Service Act, which the legislature obviously did not intend to do. We agree with the appellees that the legislature did not intend to repeal the entire Civil Service Act. The Act, by its terms, requires *141 the compensation of a chief deputy sheriff, not holding a law degree, to be fixed by the Personnel Board, and we have noted that this does not change existing law.
In Jansen v. State, 273 Ala. 166, 137 So. 2d 47 (1962), we quoted from 50 Am.Jur., Statutes, § 520, p. 529:
"`* * * Where an act, which is not a complete law within itself covering the whole subject, contains a provision to the effect that all laws and parts of laws inconsistent or in conflict therewith are repealed, the repeal extends to conflicting statutes and provisions only; all laws and parts of laws not in conflict therewith are left in full force and effect. A statute which is not wholly inconsistent with the new act continues in force except in so far as it conflicts therewith. * * *'" (273 Ala. at 170, 137 So.2d at 50)
Also, we quoted from 82 C.J.S. Statutes § 291, p. 492:
"`Where there is sufficient repugnancy or inconsistency between two statutes, or parts of two statutes, to effect a repeal by implication, the earlier statute is impliedly repealed to, and only to, the extent of the conflict, repugnancy, or inconsistency....'" (273 Ala. at 170, 137 So.2d at 50)
Thus, the power of the Personnel Board to fix salaries, etc., of positions other than that of the chief deputy sheriff is not affected by Act 389.
The appellees maintain that the Act is invalid, since it does not define or explain "educational incentive pay" and does not indicate whether the requisite law degree must be conferred by an accredited or an unaccredited law school. Indeed, Act 389 does not explain educational incentive pay, nor do we find it explained in the Civil Service Act applicable to counties of this size. But the Civil Service Act does require the Personnel Director, subject to the approval of the Personnel Board to:
"... Classify or direct the classification of all positions to be held under either municipal or county authority in accordance with the provisions of this subdivision and in accordance with the duties attached to such positions. At least once every five years, grade and classify or direct the grading and classification of all positions in the county and in each city in the county and for each appointing authority with respect to salary ..." Code of Alabama Recompiled 1958, Appendix, § 656.
Such grading is required, as recognized in Act 389, but Act 389 refers, in addition, to educational incentive pay. The term is not so uncertain and vague as to invalidate the Act. It is clear that the legislature intended to establish the chief deputy sheriff's compensation at least at three pay grades higher than the position next below the position of chief deputy sheriff. The term "including educational incentive pay" simply means that additional educational achievements may be considered in setting salaries for chief deputy sheriffs in counties having more than 6000,000 people.
No ambiguity fatal to the Act results from the failure of Act 389 to specify whether the required law degree must be awarded by an accredited or unaccredited law school. The legislation does not require a chief deputy sheriff to be "learned in the law" which we have said means being "... admitted to practice [law] in Alabama or entitled to be admitted without further examination." Opinion of the Justices, 279 Ala. 38, 42, 181 So.2d 105, 109 (1965). The statute merely requires a law degree and does not require that, in addition, it be conferred from an accredited law school.
We now move to the provision making the Act retroactive to January 1, 1975. The appellees cite us to Section 68 of the Alabama Constitution which recites:
"The legislature shall have no power to grant or to authorize or require any county or municipal authority to grant, nor shall any county or municipal authority *142 have power to grant any extra compensation, fee, or allowance to any public officer, servant, or employe[e], agent or contractor, after service shall have been rendered or contract made, nor to increase or decrease the fees and compensation of such officers during their terms of office; nor shall any officer of the state bind the state to the payment of any sum of money but by authority of law; provided this section shall not apply to allowances made by commissioners' courts or boards of revenue to county officers for ex officio services, nor prevent the legislature from increasing or diminishing at any time the allowance to sheriffs or other officers for feeding, transferring, or guarding prisoners."
The appellant cites us to Amendment II to the Alabama Constitution, which he claims exempts Jefferson County from the application of § 68. This amendment provides:
"The legislature of Alabama may hereafter, from time to time, by general or local laws, fix, regulate and alter the costs, charges of courts, fees, commissions, allowances or salaries to be charged or received by any county officer of Jefferson County, including the method and basis of their compensation."
It is clear, however, that this amendment removes only the restriction placed on the legislature by Section 68 relating to the increase or decrease of the salary of an officer during his term of office. Hawkins v. Jefferson County, 233 Ala. 49, 169 So. 720 (1936). See, also, Section 281. It does not remove the prohibition against granting compensation after services have been rendered. Section 5 of Act 389 contravenes this section of the Alabama Constitution and must, if possible, be severed from the remainder of the Act. This provision can be severed from the Act without damage to the legislative intent. The Act contains a severability clause, which should be given effect, where possible, to save a legislative enactment. Allen v. Walker County, 281 Ala. 156, 199 So.2d 854 (1967). We conclude that we may extirpate § 5, without rendering the remainder of the Act meaningless, and thus give effect to the severability clause of Act 389.
In summary, we find Act 389, with the retroactive provision pared from the Act, to be constitutionally inoffensive. In arriving at this conclusion, we are fully aware of cogent criticism of census legislation in general and, specifically, criticism that the legislature, by enacting such legislation, has ignored the Constitution. See Adams, Legislation by Census: The Alabama Experience, 21 Ala.L.Rev. 401 (1969). While these arguments are impressive, we are reluctant at this time to overturn a long line of cases establishing standards for "general" laws, or standards for determining reasonable relationship of the classification to the objective of the legislative enactment. In any case, we resist the temptation at this point to interpret differently the applicable provisions of the Constitution of 1901.
REVERSED AND REMANDED.
HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX, FAULKNER, ALMON and EMBRY, JJ., concur.
JONES, J., dissents.
JONES, Justice (dissenting):
In registering this dissent, I would emphasize at the outset that my affirmance of the trial Court's judgment of unconstitutionality of Act 389 is not based on any "general act of local application" test. Rather, my dissent is more basic. The constitution provides for two classes of legislationgeneral laws and local laws. A "general law of local application" is a judicial invention in clear and unequivocal contravention of the constitution. It is a judicially created hybridnot contemplated nor provided for by the constitutionwhich permits the passage of local acts without the necessity of advertising.
I realize this Court has been applying the Reynolds' test for well over 50 years. *143 During this period, precedent is ample to affirm or reverse the trial Court's ruling on census legislation on practically any given set of facts. This is precisly what happens when an appellate court winks at a clear constitutional mandate. That this Act is a local law as contemplated by the constitution is beyond serious question. To call it a general act of local application although meeting the Reynolds' testis to continue to indulge a judicially created fiction not in tune with constitutional reality.
The Act here under consideration is a meritorious one. It provides increased compensation to the chief deputy sheriff of the state's most populous county on the condition that he obtain a law degree. Indeed, such legislation would be commendable if made applicable to every county of our state. But, when not so applied, only one invariable conclusion obtains: it is a local law, and the constitutional requirements for a local law have not been complied with. The Act is constitutionally invalid. I would use this case as the vehicle for placing the legislature on notice that henceforth the constitutional demarcation between local laws and general laws would be judicially recognized and enforced.