The only issue in this appeal is the proper meaning of the language "totally disabled" as used in the Trinity Act, Act No. 233, Regular Session, 1951 Ala. Acts (codified at Code 1940, Tit. 62, § 528 (3) (Supp. 1955)).[1]
This is the second appeal from the City of Montgomery's dispute with Robinson, a former city fireman, over payment of Trinity Act benefits. Robinson suffered a heart attack in 1980 while on duty as a city fireman. He applied for Trinity Act disability benefits, but the City denied them. In the first appeal, City of Montgomery v. Robinson, 441 So.2d 857 (Ala. 1983), the City maintained that worker's compensation was an exclusive remedy, and, because *Page 696 
Robinson could receive worker's compensation, he was not entitled to Trinity Act benefits. This Court disagreed with the City, affirmed the trial court's declaratory judgment, and held that Trinity Act benefits are supplemental to worker's compensation.
Based on this holding, Robinson again applied for Trinity Act benefits, and, again, he was denied benefits. This time, the City and Mayor said that in spite of our holding that Robinson's entitlement to worker's compensation does not preclude his entitlement to Trinity Act benefits, he did not meet the Trinity Act's eligibility requirements, and, thus, was not entitled to draw under the Act. Specifically, the City and Mayor said that Robinson was not "totally disabled," within the meaning of the Trinity Act's qualifying language, because even though he is 100% disabled as a firefighter, he is still capable of "light duty."
Robinson again sued the City and Mayor for payment of Trinity Act benefits, and, in addition, for punitive damages for bad faith refusal to pay. Through intervention and consolidation, Robinson was joined in his suit by three other former city employees allegedly entitled to Trinity Act benefits because of "total disability."
After a trial on the issue of the proper meaning of the Act's "total disability" language, the trial court rendered judgment for the City and Mayor and against plaintiffs. The court entered a final judgment as to plaintiff Robinson pursuant to Rule 54 (b), Ala.R.Civ.P., and Robinson appealed.
The portion of the Trinity Act relevant to this appeal is as follows:
 "Any employee of any county having a population of not less than 96,000 nor more than 140,000 inhabitants, according to the 1950 or any subsequent federal decennial census, who is totally disabled as a result of an injury received while in the performance of his official duties shall receive each month during the time such total disability shall continue a benefit payment equal to the amount of one-half of his base monthly compensation at the time of his injury." The Trinity Act, Act No. 233, Regular Session, 1951 Ala. Acts (codified at Code 1940, Tit. 62, § 528 (3) (Supp. 1955)). (Emphasis added.)
Robinson argues that the qualifying language of the Trinity Act, i.e., "totally disabled," means "totally disabled to perform the employee's prior job duties." The defendants, the City, and Mayor, argue that the words "totally disabled" in the Trinity Act refer to "a covered disability which incapacitates the covered employee from working at and being retrained for gainful employment."
This Court's role in resolving disputes involving statutory interpretation "is to ascertain and effectuate the legislative intent as expressed in the statute." Darks Dairy, Inc. v.Alabama Dairy Commission, 367 So.2d 1378, 1380 (Ala. 1979). If, however, the statutory language is plain and unambiguous, its meaning obvious, our review is ended, for in such a case, we do not apply rules of construction. State v. Dawson, 264 Ala. 647,649, 89 So.2d 103, 105 (1956). Thus, our initial question is whether the Trinity Act's phrase "totally disabled" is ambiguous.
The Trinity Act provides no definition for "totally disabled," but defendants strenuously argue that a statutory definition is unnecessary, because, on its face, the phrase is unambiguous and clearly means a disability which precludes a person's working at and being retrained for gainful employment. We feel, however, that "totally disabled" is not such a term of art that it is susceptible only to the defendants', or to any other single, interpretation. In short, we have before us a phrase which on its face could reasonably be interpreted to mean either "incapacitated to perform one's prior job duties," as Robinson urges, or, "incapacitated to work at and be retrained for gainful employment," as defendants urge. We, therefore, hold that the Trinity Act's qualifying language, "totally disabled," is ambiguous, and we must now resort to rules of construction "to ascertain and effectuate the legislative intent." Darks Dairy, Inc., supra. *Page 697 
One well recognized extrinsic aid in statutory interpretation is the construction and interpretation given the act or statute by the administrative agency responsible for its enforcement. In Boswell v. Abex Corporation, 294 Ala. 334, 336,317 So.2d 317, 318 (1975), this Court stated:
 "The correct rule is that an administrative interpretation of the governmental department for a number of years is entitled to favorable consideration by the courts."
And, in Hulcher v. Taunton, 388 So.2d 1203, 1206 (Ala. 1980), this Court said:
 "Interpretations of an act by the administrative agency charged with its enforcement, though not conclusive, are to be given great weight by the reviewing court."
We now look to the history of the Trinity Act to determine how the City has interpreted "totally disabled" in the past.
The Trinity Act had its genesis in, and received its appellation from, a fire that occurred in January of 1951 at the Trinity Presbyterian Church in Montgomery. Two City of Montgomery firemen died while fighting the fire at Trinity Church. At that time, the City provided no disability or death benefits for its employees or their families. Nor did city employees have the benefit of worker's compensation, because the worker's compensation act, Code 1975, § 25-5-1, et seq., had not yet been extended to cover Montgomery city employees; it was not so extended until 1975. Code 1975, § 25-5-13 (a). As a result of the firemen's deaths, Montgomery's city commission and legislative delegation perceived the need for a program to provide disability and death benefits for city employees. In the legislature's regular session that year, the Trinity Act was passed. The Act provided, inter alia, benefits to an employee "totally disabled as a result of an injury received while in the performance of his official duties."
As to the historical interpretation of "totally disabled," the evidence before us is overwhelming and uncontroverted that the City has always interpreted the phrase to mean "totally disabled to perform the employee's prior job duties." Defendant Mayor Folmar, himself, testified as follows:
 "Q. Mayor, prior to January of 1984, the City of Montgomery had uniformly and consistently interpreted and applied the term `totally disabled' in the Trinity Act to be `disabled to perform one's duties,' didn't it?
"A. That's correct.
"* * *
 "Q. Well, let me rephrase it. Prior to January of 1984, if a City of Montgomery employee had a doctor's letter that he was unable to perform his duties and submitted that through the channels he would have received Trinity Act benefits?
"A. In all probability, yes.
 "Q. All right. And the person was not required to show prior to January of this year that he was disabled to perform any type of gainful employment to get Trinity Act benefits, was he?
"A. That's correct."
Thus, from its enactment until January of 1984, when plaintiff Robinson made reapplication for Trinity Act benefits, a period of 33 years, the City's interpretation of "totally disabled" required only "the total disability to perform one's prior job duties." As previously stated, we must give this longstanding interpretation "great weight" and "favorable consideration."Boswell, supra; Hulcher, supra.
Defendants argue, however, that the City's interpretation of "totally disabled" prior to January of 1984 was clearly erroneous and unreasonable, and therefore, that "it must be changed in accordance with the clear and unambiguous meaning of the statute in accordance with the uniform and settled law of this state." In Boswell, supra, 294 Ala. at 336,317 So.2d at 318, this Court did say that "[the administrative interpretation] rule of construction is to be laid aside where it seems reasonably certain that the administrator's interpretation has been erroneous and that a differentconstruction is required *Page 698 by the language of the statute." (Emphasis added.) As previously discussed, however, we think that the language "totally disabled" is reasonably susceptible to the City's 33-year interpretation. Certainly, that interpretation is reasonable as to these plaintiffs.
Defendants argue, specifically, that the interpretation plaintiffs seek is clearly erroneous and would lead to "unreasonable" and "unjust" results. They claim that under the City's previous definition of "totally disabled," an injured city employee might retire and draw Trinity Act benefits, and find employment elsewhere, or even in a different capacity with the City, and continue to draw Trinity Act benefits, while being paid for current full-time employment. We are not presented with those facts here, nor with an administrative interpretation of such hypothetical facts; but, if the interpretation we make today could lead to an "unreasonable" or "unjust" result in the future, the legislature is free to amend the Trinity Act and more clearly define the term "total disability."
In addition to the City's longstanding, reasonable interpretation of this Act, we have in this case subsequent legislative action to aid us in our interpretation of "totally disabled." By 1962, Montgomery had outgrown the population classification of the original 1951 Trinity Act. The legislature, in order that the Act "continue in full force and effect," reenacted it, changing only the population classification. Act No. 26, Special Session, 1962 Ala. Acts. Thus, eleven years after the Trinity Act was first enacted and the City began interpreting it to apply to those employees "totally disabled to perform their prior job duties," the legislature reenacted the Act, without altering the City's interpretation. This subsequent legislative reenactment of the Act without change in the City's construction of it is indicative of "legislative approval of the [City's] construction." State v. Tri-State Pharmaceutical,371 So.2d 910, 914 (Ala.Civ.App. 1979). See also, Haden v. McCarty,275 Ala. 76, 152 So.2d 141 (1963).
Because we find that for 33 years the City reasonably interpreted the "totally disabled" language of the Trinity Act, and because the legislature reenacted the Act without change to that interpretation 11 years after the City adopted it, we hold that the proper interpretation, i.e., the interpretation expressing the legislative intent, is that "totally disabled" means "totally disabled to perform one's prior job duties."
A statement made by this Court in International Union ofOperating Engineers, Local Union No. 321 v. Water Works Board,276 Ala. 462, 465, 163 So.2d 619, 622 (1964), is particularly appropriate here:
 "[W]here an administrative construction by proper officials is fair and reasonable and has been followed for the prescriptive period of twenty years or longer, the courts are not disposed to alter that construction merely because the highest officials may have changed their minds about the matter in consideration."
The judgment of the trial court is due to be, and it hereby is, reversed, and the cause remanded to the trial court for action not inconsistent with this opinion.
REVERSED AND REMANDED.
JONES, SHORES, BEATTY and ADAMS, JJ., concur.
[1] Though not recodified in the 1975 Code, Code 1940, Tit. 62, § 528 (3), continues in effect by virtue of the saving clause in Code 1975, § 1-1-10:
 "Subject to the provisions of this section, or as may be otherwise provided in this Code, all statutes of a public, general and permanent nature, not included in this Code, are repealed. The foregoing provisions of this section shall not repeal, nor be construed to repeal, local, private or special statutes; nor statutes which relate to or apply to only one county, municipality, political subdivision, district or territory; nor statutes which apply to one or more counties, municipalities, political subdivisions, districts or territories on the basis of population."