G. Hal Walker, Jr., appeals the trial court's summary judgment in favor of the City of Montgomery (hereinafter referred to as "the City") and its denial of Walker's motion for a partial summary judgment. We affirm.
The trial court aptly set out the underlying facts and procedural history of this case in its August 7, 2001, order entering a summary judgment for the City and denying Walker and another plaintiff's[1]
motion *Page 41 
for a partial summary judgment, as follows:
 "Plaintiff, G. Hal Walker, Jr., is an attorney engaged in private practice within the City of Montgomery as a salaried employee of Crumpton Associates, L.L.C. Purporting to represent a class of similarly situated, salaried professionals, Plaintiff Walker initiated this action on February 7, 2001, with a Complaint alleging that the City of Montgomery collects a business or privilege license tax upon salaried professionals in violation of a 1957 enactment by the Alabama Legislature, Act No. 457, which provides, in pertinent part:
 "`No city within the State of Alabama having a population of not less than 100,000 nor more than 125,000, according to the last or any subsequent federal decennial census, shall have the power or authority to levy or impose any privilege license tax on all employees of employers working for wages, salaries, or other compensation, within the corporate limits or police jurisdiction of such city. . . .'
 "Plaintiff demanded a `permanent injunction, enjoining the City from levying or imposing privilege license taxes upon, or collecting the same from any person who is an "employee of [an] employer" and from otherwise attempting to enforce any ordinances relating thereto.' In addition to attorney's fees, the Complaint also sought `an Order requiring the City of Montgomery to refund all taxes, fees, penalties, fines or other such impositions which the City has collected from any member of the Plaintiff's class under authority or purported authority of any ordinances which impose a license tax upon "employees of [an] employer."'
 "The City of Montgomery responded to the Complaint on March 14[, 2001,] with a Motion to Dismiss contending that Act No. 457 no longer applies to the City of Montgomery because the City outgrew its population bracket. The City filed a supporting memorandum on April 20, [2001,] and Plaintiff filed an opposing memorandum, which recited the issue raised by the Complaint as follows:
 "`In its memorandum in support of its motion to dismiss the City quite correctly states that the Plaintiff's case rests entirely on Act 457, 1957 Ala. Legis. (Act 457). The City is also correct that this case rests entirely on the question of whether, under the terms of Act 457, the City of Montgomery can "grow out of" the coverage of Act 457.'
 "At the scheduled hearing on April 25, [2001,] the parties agreed that the material facts were undisputed and that the determinative issue is whether the City of Montgomery can `grow out of' the coverage of Act No. 457. Plaintiff requested an expedited proceeding for this determination, but the Court expressed reservations about the procedural propriety of deciding this controlling legal question in the context of a Motion to Dismiss. Counsel suggested to the Court three options — oral arguments on stipulated facts, an evidentiary hearing, or motions for summary judgment. Accordingly, the Court denied the Defendant's Motion to Dismiss, and instead directed the parties to reach consensus on both the format and a mutually convenient date for the next proceeding. The Court's April 26[, 2001,] Order setting a July 6[, 2001,] hearing in this cause reflected the parties' consensus.
 "The City's Answer to the Complaint, filed May 30[, 2001,] asserted several affirmative defenses, including challenges to the constitutionality of Act No. 457 under the federal and state constitutions. *Page 42 
Defendant gave due notice of this constitutional challenge to the Attorney General, as required by Ala. Code § 6-6-227 (1975), and the record reflects that all subsequently filed pleadings have been served upon the Attorney General. An amended complaint, filed on June 4, [2001,] added a second Plaintiff, John McLain, an engineer working within the City of Montgomery as a salaried employee of Jeffcoat Engineers Surveyors. Defendant responded on June 18[, 2001,] with an amended answer.
 "Defendant City filed on June 27[, 2001,] its Motion for Summary Judgment along with a memorandum brief, documentary exhibits and affidavits, and appeared to argue the Motion at the previously scheduled hearing on July 6[, 2001]. Plaintiffs did not appear, but in a pleading filed on July 9, [2001,] Counsel offered cause for his absence, and the Court granted Plaintiffs' requested leave to respond. Plaintiffs filed on July 13[, 2001,] their Motion for Partial Summary Judgment supported by Plaintiffs' Response to Defendant's Motion for Summary Judgment.
 "After duly considering all of the pleadings, evidentiary submissions, legal authorities and arguments, the Court concludes that this record clearly shows, and the parties agree, that there is no genuine issue as to any material fact. In their motion for partial summary judgment, Plaintiffs declare:
 "`This motion is based upon the City's Motion for Summary Judgment and its "Summary of Undisputed Material Facts" and supporting evidence contained there. Put simply, the Plaintiff agrees [sic] with the Defendant's recitation of the facts, agrees that those facts are the only ones material to the question, and agrees that those facts are undisputed. It is Plaintiffs' contention however that it is they, rather than the City, who are entitled to a judgment on this issue.'
 "This Court's ruling on the parties' opposing motions for summary judgment is guided, therefore, by the parties' agreement that there is no genuine controversy on any material facts. Moreover, the parties agree on the determinative question of law, as succinctly stated by Plaintiffs: `whether, under the terms of Act 457, the City of Montgomery can "grow out of" the coverage of Act 457.'"
(Emphasis omitted.)
The trial court granted the City's motion for a summary judgment and denied Walker and McLain's motion for a partial summary judgment on August 7, 2001. Walker filed a notice of appeal to this Court on September 8, 2001. In his brief to this Court, Walker states the issue presented in this appeal as:
 "Whether the trial court erred in granting the Defendant's Motion for Summary Judgment and denying the Plaintiffs' Motion for Partial Summary Judgment on the basis that even though Act 457, Alabama Legislature 1957, at one time applied to the City of Montgomery, the Act ceased to apply when the City's population outgrew the bracket established by Act 457."
(Emphasis supplied by Walker.)
Our review of a summary judgment is de novo.
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); *Page 43 
Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359
(Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997). Walker confirms what the trial court stated in its order, stating in his brief that "there were . . . no material facts in dispute." Therefore, our review is more appropriately limited to whether the trial court correctly determined that the City was entitled to a summary judgment as a matter of law.
The gist of Walker's argument is that the City was "locked into" the population bracket set out in Act No. 457, 1957 Ala. Acts (hereinafter referred to as "the Act"), at the time of its passage in 1957. The materials submitted to the trial court show that in 1957, the records available from the 1950 federal decennial census reported that the City had a population of 106,525. Walker's argument concentrates on the language in the Act stating that it applies to cities having populations between 100,000 and 125,000 "according to the last or any subsequent federal decennial census." (Emphasis added.) He argues that the disjunctive "or" used in the statute, given the normal statutory construction, means that because the Act applied to the City at the time of its passage in 1957, it continues to apply today; Walker contends that while other cities could be brought within the purview of the Act by their reported populations in a subsequent federal decennial census, the City could not grow out of the population bracket set out in the Act.
The trial court's August 7, 2001, order provided a thoughtful discussion of this issue. That order stated, in pertinent part:
 "It is undisputed that Act No. 457 falls within that category of pre-Peddycoart[1] legislative enactments known as general acts of local application. Because such acts did not apply uniformly throughout the state, they were not general laws; because they were not preceded by the requirements of notice and publication mandated by the Alabama Constitution, they were not local laws. Shortly after the adoption of the 1901 Constitution . . . and until its 1978 decision in Peddycoart, the Alabama Supreme Court allowed the legislature to use population classifications to restrict the scope of an act to the municipalities or counties which satisfied the population bracket. See Phalen v. Birmingham Racing Commission, 481 So.2d 1108, 1114 (Ala. 1985).
 "In an apparent effort to salvage the multitude of pre-Peddycoart general bills of local application, the Legislature secured the ratification of Amendment 389 to the Alabama Constitution, and `the effect of this Amendment was to validate all "bracket bills" enacted without advertising before January 13, 1978, the date of the Peddycoart decision, and *Page 44 
which were not otherwise unconstitutional.' Freeman v. Purvis, 400 So.2d 389, 391 (Ala. 1981).
 "This Court need not [sic] address Defendant's constitutional challenges to Act No. 457 only if the Act still governs the City of Montgomery, and the issue of the applicability presents two questions[:] first, can the City legally outgrow the coverage of this 1957 population bracket bill, and if so, does the evidence establish that the City has exceeded the 100,000-125,000 population bracket. Since the parties are in accord that the City's population increased beyond the bracket after the 1960 census,[2] the Court's determination rests on whether it is legally possible for the city to outgrow this bracket bill.
 "As the parties have aptly observed, the Alabama Supreme Court's decisions on population bracket bills rival only the Alabama Legislature's propensity for enacting such bills before 1978. Although the Court has provided abundant authority that a governmental entity can grow into the coverage of a general bill of local application,[3] it does not appear that the Court has been presented a case which mandates a precise holding that an entity can also grow out of such coverage. In two cases, however — Smith v. Lancaster, 114 So.2d 568, 571 (Ala. 1959), and Robinson v. City of Montgomery, 485 So.2d 695, 696
(Ala. 1986) . . . — the factual contexts gave the Court reason to note that an entity can increase in population so that it falls outside the coverage of a bracket bill. In each case, the Court left no doubt that it aligns with the prevailing, well-established rule that a general law of local application depends for its validity on whether its population bracket applies to a class which is open, or shifting, to permit entry and exit based upon changes in an entity's population.
 "The rule is explained, as follows, in 2 Norman J. Singer, Sutherland Statutes Statutory Construction, § 40.09, at 236-237 (5th ed. 1992):
 "`A classification by population must be prospective to be general. An act limited to a particular census is a form of identification and is invalid, as no subsequent changes in population would enable other communities to come within the qualifications of the act. A decision concerning validity is usually based on whether by the terms of the act, it is possible for other local government units to come under the operation of the act at a later time by change in their populations. . . . Just as the classification must be open to admit entry
of other local governments to the coverage of a statute as a result of changes in population which bring them within the qualifying ranges, subsequent changes in population must also operate to enable exit from the coverage of an act in order for it to be valid.' (emphasis added.)
 "See also Herbrand and Shapiro, Validity of Statutory Classifications Based on Population — Government Employee Salary or Pension Statutes, 96 A.L.R.3d 538, 543 (1979), and Sumter County v. Allen, [193 Ga. 171, 17 S.E.2d 567 (1941)].
 "The Court also finds persuasive the undisputed evidence of the Alabama Legislature's acknowledgment that population bracket bills must permit entry and exit of cities or counties as their population increases. Numerous examples reflect a consistent pattern of legislative action and intent. When the Legislature intended to keep a city or county within the scope of a bracket bill after it had outgrown the population bracket, the Legislature enacted *Page 45 
another bill which expanded the bracket; significantly, the new bill expressly referenced the previous legislation, the subsequent increase in population for the entity previously covered, and the legislative intent to continue that entity within the scope of coverage.
 "[1] In Peddycoart v. City of Birmingham, 354 So.2d 808
(1978), the Alabama Supreme Court brought to a halt the Alabama Legislature's decades-long resort to such acts by mandating that population classifications no longer be used to avoid the definition of a local act. As stated in § 110 of the Alabama Constitution, a local act is one `which applies to any political subdivision or subdivisions of the state less than the whole.'
 "[2] The undisputed evidence is that the City of Montgomery's population, according to the federal decennial census, was 106,525 in 1950, 134,393 in 1960, and 133,386 in 1970.
 "[3] See, e.g., Belcher v. McKinney, 333 So.2d 136 (Ala. 1976), and Brittain v. Weatherly, 207 So.2d 667 (Ala. 1968)."
(Some emphasis omitted.)
In Montgomery County Commission v. Hobbie, 368 So.2d 264 (Ala. 1979), this Court observed:
 "In Belcher v. McKinney, 333 So.2d 136 (Ala. 1976), we reiterated the three tests which must be met if an act based on a population classification is to be a general act: (1)'There must be a substantial difference in population; (2) the classification must be made in good faith; and (3) the classification must be reasonably related to the purpose sought to be achieved by the act.' 333 So.2d at 139, citing Reynolds v. Collier, 204 Ala. 38, 85 So. 465 (1920). In addition the act must have application to a shifting class, i.e., `there must exist a possibility of application to other counties which may come within the classification fixed by the statute.' Belcher, supra at 140; Brittain v. Weatherly, 281 Ala. 683, 207 So.2d 667 (1968); State ex rel. Camp v. Herzberg, 224 Ala. 636, 141 So. 553 (1932). The act cannot be `so hedged about with limitations as to amount to a designation rather than a classification.' Camp, supra at 639, 141 So. at 554; Brittain v. Weatherly, supra."
368 So.2d at 269 (emphasis added). While Belcher v. McKinney, 333 So.2d 136
(Ala. 1976), considered legislative acts applicable to counties, the same requirements apply in considering acts applicable to cities. See City ofBirmingham v. Samford, 274 Ala. 367, 149 So.2d 271 (1963). Further, this Court stated in Phalen v. Birmingham Racing Commission, 481 So.2d 1108,1114 (Ala. 1985), that "[t]he concept was that population classifications, when established in an act, were permitted if the possibility existed for other subdivisions to grow into the classification." (Emphasis added.)
While this Court has never expressly so stated, it has implied that a city or county could grow out of a population classification. The two cases relied on by the trial court provide good examples of this Court's touching on this subject. In Smith v. Lancaster, 269 Ala. 579,114 So.2d 568 (1959), this Court considered whether an act that established and applied a population classification to counties having a population between 80,000 and 94,000 was valid. Etowah County was the only county to which the act applied. In the course of determining that the act was invalid because it was a "local law" that had been passed without compliance with the appropriate publication requirements, the Court stated:
 "According to the 1950 decennial census, Etowah County had a population of 93,892. So, if the 1960 census shows an increase in its population of as little as 109 it will not then be subject to the Act."
269 Ala. at 583, 114 So.2d at 570 (emphasis added.) Further, in Robinsonv. City of *Page 46 Montgomery, 485 So.2d 695 (Ala. 1986), this Court observed:
 "By 1962, Montgomery had outgrown the population classification of the original 1951 Trinity Act. The legislature, in order that the Act `continue in full force and effect,' reenacted it, changing only the population classification."
485 So.2d at 698 (emphasis added).
Based on the foregoing, we conclude that an act based on a population classification must have application to a "shifting" class in order to be a general law. See Hobbie, supra. While this Court has previously failed to explicitly so hold, we today determine and hold that if a class within a population classification is to be considered as "shifting," a city or county within that class must be able to outgrow the classification just as a city or county can grow into such a classification. See Phalen,supra. Accordingly, the trial court's summary judgment for the City is due to be affirmed.
AFFIRMED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.
[1] John McLain, an engineer employed in the City of Montgomery by Jeffcoat Engineers Surveyors, was also a plaintiff in this case. However, he has not appealed the summary judgment.