[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 826 
 On Application for Rehearing
In May 2001, Bradley Outdoor, Inc., a company that erects billboards, began submitting to the building department of the City of Florence drawings related to the planned construction of an off-premise advertising billboard on property owned by Bank Independent ("the Bank Independent billboard"). Bradley Outdoor's owner-president, Bradley Askew, discussed the Bank Independent billboard with Gary Williamson, the head of the City's building department, and Kathy Austin, the City's lot and sign inspector. Certain drawings related to the Bank Independent billboard failed to contain the necessary information, so Askew did not apply for a permit to construct the Bank Independent billboard in May.
On June 19, 2001, the city council passed a resolution imposing a moratorium on the granting of permits for off-premise signs pending the amendment of the City's zoning ordinance pertaining to off-premise signs. The moratorium reads as follows:
 "WHEREAS, the City Council of the City of Florence, Alabama has determined that billboards located on premises to which they do not specifically relate *Page 827 
(off-premise signs) result in harm to the welfare of the City by creating visible clutter and blight and by promoting a negative aesthetic impact in the City, and;
 "WHEREAS, the City Council has further determined that it is in the best interests of the City, in the protection of the public health, safety and welfare, that the regulation and prohibition of off-premise signs should be analyzed by the staff, the regulated community and the citizens of the City for the purpose of determining the best possible approach for such regulation under the Constitution of the United States and the State of Alabama, and;
 "WHEREAS, in order to preserve the status quo pending further investigation of the possible regulation of off-premise signs, the City Council has determined that a moratorium should be imposed upon the issuance of permits for the construction of new off-premise signs;
 "NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF FLORENCE, ALABAMA AS FOLLOWS:
 "A moratorium is hereby imposed upon the processing of any building permit applications intended to authorize the installation of off-premise signs or billboards. This moratorium will terminate on December 19, 2001, or upon the effective date of the adoption by the City Council of zoning ordinance amendments designed to regulate off-premise signs, whichever shall first occur; unless extended further' by the action of the City Council."
(Capitalization in original.)
Askew went to the City's building department to inquire about the impact of the moratorium on the permit for the Bank Independent billboard. Austin informed Askew that the permit for the Bank Independent billboard would be issued as soon as Askew applied for the permit and provided the appropriate drawings. Askew apparently applied for the permit on June 25, 2001; at that time he still needed the appropriate drawings to comply with the ordinance. However, when Askew returned to the building department with the appropriate drawings on August 2, 2001, Williamson orally informed Askew that the permit would not be issued because of the moratorium. Williamson suggested that Askew write a letter outlining the time line of his permit request, which Askew did; in that letter, Askew stated that the Bank Independent billboard permit was denied on August 2, 2001.
The City, unlike most municipalities, exercises what is known as extraterritorial zoning; that is, it has the power to regulate by its zoning ordinances an area outside its corporate city limits. The City has this power by virtue of Act No. 2135, Ala. Acts 1971, which reads:
"Be It Enacted by the Legislature of Alabama:
 "Section 1. The provisions of this Act shall apply to all cities having populations of not less than 33,500 nor more than 36,000 inhabitants according to the last or any subsequent federal decennial census; it shall be the public policy of any such city to extend, alter, and rearrange the boundaries of the zoning authority of such city to include the area described in Section 2 of this Act so that the Cox Creek Parkway shall hereby be protected and so than [sic] the orderly growth of the area will be insured and the safety of the traveling public will be enhanced.
 "Section 2. Any city coming under the provisions of Section 1 of this Act shall hereinafter have such authority as *Page 828 
provided by law to enact zoning regulations for an area which is defined as:
 "All that land lying between the present Corporate Limits of the City of Florence, Lauderdale County, Alabama, and a line described as beginning at a point on the East line of Section 6, Township 3 South; Range 10 West, said Launderdale [sic] County, and at a point on the present Corporate Limits, and run northwardly along the Section line to the centerline of Florence Boulevard (U.S. Highway 43 72): run thence eastwardly along the centerline of said Florence Boulevard to the centerline of Middle Road; run thence northwardly along the centerline of Middle Road to a point 430 feet northwardly from the centerline of Hough Road; thence west-wardly 430 feet northwardly from and parallel to the centerline of Hough Road to a point which is 520 feet eastwardly from the Centerline of Cox Creek Parkway (Alabama Highway Department Project S-1120-A); thence west-wardly 520 feet northwardly from and parallel to centerline of said Parkway to east line of Section 26; Township 2 South, Range 11 West; thence westwardly 520 feet north of and parallel to south line said Section 26 to the Old Chisholm Road and present Corporate Limits.
 "ALSO, All the south one-half Section 27, Township 2 South, Range 11 West, between west line of said Section 27 and the present Corporate Limits;
 "ALSO, All Section 34, Township 2 South, Range 11 West, between, the west line of said Section 34 and the present Corporate Limits;
 "ALSO, All that land between the present Corporate Limits and a line described as beginning at a point of [sic] the west line of Section 34, Township 2 South, Range 11 West 520 feet northwardly from the centerline of Cox Creek Parkway (Alabama State Highway Department Project S-1120-A), and run thence west-wardly 520 feet northwardly from and parallel to the centerline of said Parkway and its extension as same is now staked or as it shall later be staked and laid out, to a point 430 feet west-wardly from the centerline of Savannah Road (Alabama Highway 20); thence southeastwardly 430 feet west-wardly from a parallel to the centerline of said Savannah Road to the centerline of Cypress Creek and the present Corporate Limits.
 "Section 3. This Act shall take effect immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law."
After the Bank Independent billboard permit was denied, Askew and another individual began developing plans to seek permits for more off-premise billboards. In December 2001, Bradley Outdoor applied for 54 permits from the City for the construction of off-premise billboards. On December 5, 2001, the City enacted an amendment to its off-premise sign ordinance; that amendment became effective on December 7, 2001, and the amended ordinance prohibits the off-premise billboards sought to be erected by Bradley Outdoor. Also on December 5, 2001, Bradley Outdoor filed a complaint seeking a judgment declaring that the moratorium was invalid and a petition for a writ of mandamus requesting that Williamson be compelled to issue permits for 46 proposed billboards; that case was assigned case no. CV-01-790 ("the declaratory-judgment/mandamus action"). Bradley Outdoor later amended its complaint to seek a judgment declaring that Act No. 2135 was unconstitutional under §§ 104 and 105 of the Alabama Constitution of 1901. After being served, see
Ala. Code 1975, § 6-6-227, *Page 829 
the attorney general waived further participation in the action.
The City denied all of Bradley Out-door's permit applications. On February 14, 2002, Askew and Bradley Outdoor appealed the denial of 45 of the 54 permit applications filed in December 2001 and the denial of the Bank Independent billboard permit application to the City's Board of Zoning Adjustment ("the Board"). The Board met on March 18, 2002, to consider the appeals. The minutes of the meeting reflect that the Board declined to consider the appeal of the denial of the Bank Independent billboard permit application because the appeal of the denial was untimely, coming more than 30 days after the denial of the permit application on August 2, 2001. Askew, on the advice of his attorney, made no statement to the Board regarding any of the permit applications under review because those permit applications were the subject of the declaratory-judgment/mandamus action. However, Askew had submitted a document outlining why the basis given by Williamson for the denial of each permit application was incorrect. After consideration of the issues, the Board unanimously denied the appeal of all of the permit applications under review. On April 2, 2002, Askew and Bradley Outdoor appealed the denial of the appeal to the circuit court; that case was assigned case no. CV-02-235 ("the zoning action").
The declaratory-judgment/mandamus action and the zoning action were consolidated for the purposes of discovery and trial. The parties filed cross-motions for a summary judgment in both actions. The trial court, after considering the motions, granted a summary judgment in favor of the City and Williamson in the declaratory-judgment/mandamus action and in favor of the Board in the zoning action. Bradley Outdoor appealed the summary judgment in favor of the City and Williamson; that appeal was assigned case no. 2040915 ("the declaratory-judgment/mandamus appeal"). Bradley Outdoor and Askew appealed the summary judgment in favor of the Board; that appeal was assigned case no. 2040916 ("the zoning appeal"). The appeals were consolidated, and the parties filed briefs addressing both appeals.
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3); seeLee v. City of Gadsden, 592 So.2d 1036, 1038
(Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee,592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life AssuranceCo. of Florida, 547 So.2d 870, 871 (Ala. 1989);see Ala. Code 1975, § 12-21-12(d).
In regard to the declaratory-judgment/mandamus appeal, Bradley Outdoor argues that Act No. 2135, which grants to the City the power to zone in an area outside its corporate limits, is unconstitutional on two bases. It first argues that Act No. 2135 violates Art. IV, § 104(18) of the Alabama Constitution of 1901 by unlawfully extending the City's charter. Bradley Outdoor further argues that Act No. 2135 violates Art. IV, § 105 of the *Page 830 
Alabama Constitution of 1901 because Act No. 2135 conflicts with the general laws of the state regarding zoning by allowing the City to zone outside of its corporate limits. In conjunction with this argument, Bradley Outdoor argues that Act No. 2135 is no longer applicable to the City because the City has since outgrown the population class of Act No. 2135.
Bradley Outdoor first argues that Act No. 2135 is unconstitutional because it violates § 104 of the Alabama Constitution of 1901, which prohibits a local law from amending the charter of a municipality. Section 104(18) reads:
 "The legislature shall not pass a special, private, or local law in any of the following cases:
 ". . . .
 "(18) Amending, confirming, or extending the charter of any private or municipal corporation, or remitting the forfeiture thereof; provided, this shall not prohibit the legislature from altering or rearranging the boundaries of the city, town, or village."
Bradley Outdoor contends that the extension of the City's zoning boundaries in Act No. 2135 runs afoul of the proscription stated in § 104(18). The City, however, contends that the act does not violate § 104(18) because the changes in the City's zoning boundaries are territorial changes and do not restrict the exercise of the zoning powers to be exercised by the City.
In support of its argument that the extension of the City's zoning boundaries does not run afoul of § 104(18), the City relies on Trailway Oil Co. v. City of Mobile,271 Ala. 218, 122 So.2d 757 (1960). In Trailway Oil Co., our supreme court considered a challenge to a local act that restricted the exercise of the City of Mobile's police powers within its police jurisdiction. Trailway Oil Co.,271 Ala. at 220, 122 So.2d at 758-59. The local act, Act No. 80, Ala. Acts 1956, read as follows:
 "`Section 1. That no municipality whose corporate limits do not lie within or extend into and embrace and include a portion of Baldwin County shall have or exercise police jurisdiction within Baldwin County; nor shall any such municipality exercise police jurisdiction, police powers or taxing powers within Baldwin County or over or on any person in Baldwin County or property or business or trade or profession in Baldwin County; nor shall any such municipality levy, fix or collect any license or fee of any kind on or for the exercise of any business, trade or profession done in Baldwin County; nor shall any ordinance of any such municipality enforcing police or sanitation regulations or prescribing fines or penalties for violation thereof have force or effect in Baldwin County.'"
Trailway Oil Co., 271 Ala. at 220, 122 So.2d at 759
(quoting Act No. 80, Ala. Acts 1956). The City of Mobile challenged Act No. 80 on the basis that it violated § 104(18) by amending its charter. Trail-way Oil Co.,271 Ala. at 221, 122 So.2d at 760. The court determined that Act No. 80 was constitutional under § 104(18) because "the act in question [was] territorial only in effect, merely restricting the police jurisdiction of the City of Mobile in area, but not subjectively." Trailway Oil Co., 271 Ala. at 221,122 So.2d at 760. The court further explained that the language of § 104(18) itself revealed the legislature's intent "`to make the matter of extending the boundaries of cities and towns an exception to the prohibition against local legislation.'"Trailway Oil Co., 271 Ala. at 224, 122 So.2d at 762-63
(quoting In re Opinion of the Justices, No. 77,249 Ala. 312, 313, 31 So.2d 309, 310 (1947)). Because Act No. 80 "accomplishe[d] only a *Page 831 
relocation of the territorial extent of the police jurisdiction and, within the remaining area of the police jurisdiction, d[id] not reduce, expand, or have any other effect on the incidents which by law are inherent in the police powers of cities and towns in this state," the court concluded that the territorial limitation contained in Act No. 80 did not violate § 104(18).Trailway Oil Co., 271 Ala. at 225, 122 So.2d at 763-64. The City contends that the expansion of the territorial boundaries of its zoning power is like the restriction of the territorial boundaries of the City of Mobile's police power. Because the expansion does not affect the manner in which the zoning power is to be exercised, the City argues, the territorial expansion of the limits within which the City may exercise that power does not violate § 11)4(18). Based on our reading ofTrailway Oil Co., we agree. Act No. 2135 simply expands the territory over which the City's zoning power may extend. Nothing in Act No. 2135 purports to affect in any way the City's actual power to zone. Thus, under the language of § 104(18), which permits local laws to change the territorial boundaries of municipalities, Act No. 2135 is constitutional.
Bradley Outdoor also argues that Act No. 2135 is unconstitutional because it conflicts with the general law of this state concerning zoning. Indeed, as Bradley Outdoor correctly points out, § 11-52-70, Ala. Code 1975, grants to each municipal corporation the power to zone "within its corporate limits." However, our supreme court has implicitly recognized that extraterritorial zoning may be provided for by appropriate enabling legislation: "In the absence of anyenabling legislation expressly providing otherwise, zoning enactments of a municipality are limited to its territorial boundaries and are invalid to the extent that they seek to impose zoning regulations and restrictions on land outside city limits." Roberson v. City of Montgomery, 285 Ala. 421,423, 233 So.2d 69, 70 (1970) (emphasis added). Roberson
involved an attempt by the City of Montgomery to zone outside of its corporate limits. Roberson, 285 Ala. at 423,233 So.2d at 69-70. Because no legislative act granted the city such power, the City of Montgomery was prohibited from zoning outside its corporate limits. Roberson, 285 Ala. at 423,233 So.2d at 70.
Act No. 2135, however, is an enabling act expressly granting the City of Florence the ability to zone a described area lying outside of its corporate limits. Bradley Outdoor argues that Act No. 2135, because it expands the zoning power of the City outside its corporate limits, conflicts with the general zoning law, which provides a municipality the power to zone only within its corporate limits.
Article IV, § 105, provides:
 "No special, private, or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state; and the courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and as to whether the relief sought can be given by any court; nor shall the legislature indirectly enact any such special, private, or local law by the partial repeal of a general law."
 Our supreme court has explained that "our Constitution authorizes local legislation, and sets out a procedure for its enactment. Under that authorization local legislation reflecting responses to local needs may be enacted. It is only when those local needs already have been responded to by general legislation that § 105 of our state Constitution prohibits special treatment by local law." *Page 832 
Peddycoart v. City of Birmingham, 354 So.2d 808, 814-15
(Ala. 1978). Our supreme court has further explained that we are to look at "`whether the object of the local law is to accomplish an end not substantially provided for and effectuated by the general law,'" Miller v. Marshall County Bd. of Educ.,652 So.2d 759, 761 (Ala. 1995) (quoting Drummond Co. v.Boswell, 346 So.2d 955, 958 (Ala. 1977)), and has indicated that, when a local law is found to have responded to "`demonstrated local needs'" not otherwise addressed by the general law, it is not unconstitutional under § 105.Miller, 652 So.2d at 761 (quoting State Bd. ofHealth v. Greater Birmingham Ass'n of Home Builders,384 So.2d 1058, 1062 (Ala. 1980)) (emphasis omitted).
Thus, in order to determine whether Act No. 2135 violates § 105, we must consider whether that act addressed an existing local need not addressed by the general zoning statutes. The act itself explains that its purpose is to protect the Cox Creek Parkway, to ensure the "orderly growth of the area," and to enhance "the safety of the traveling public." The general zoning laws do not address the City's need to protect the safety of the traveling public and to ensure the orderly growth along a major public thoroughfare in an area lying outside its corporate limits. Thus, the need addressed by Act No. 2135 is not addressed by the general law and the act is not unconstitutional under § 105.
Bradley Outdoor also argues that the City is no longer entitled to zone extra-territorially under Act No. 2135 because the City has outgrown the population class set out in the act. In support of this argument, Bradley Outdoor cites Walker v. City ofMontgomery, 833 So.2d 40, 46 (Ala. 2002), in which our supreme court held that a law containing a "shifting" population class permits cities to which the law applied to both grow into and grow out of the population class. The law at issue inWalker, Act No. 457, Ala. Acts 1957, prohibited the imposition of a privilege license tax on the employees working within the corporate limits or police jurisdiction of cities with populations between 100,000 and 125,000. Walker,833 So.2d at 41. The City of Montgomery had been within the specified population class when Act No. 457 was enacted in 1957; however, the city had outgrown the class as of the 1960 census.Walker, 833 So.2d at 44 n. 2. The city had passed a privilege license tax, and certain taxpayers filed suit to have the tax declared invalid under Act No. 457. Walker,833 So.2d at 41. Thus, the question addressed by the Walker
court was whether the city could outgrow the population class of Act No. 457 and therefore validly impose the tax.Walker, 833 So.2d at 43. The taxpayers argued that the use of the disjunctive "or" in the portion of Act No. 457 describing the means for determining the population of a city, i.e., "`according to the last or any subsequent federal decennial census,'" indicated the legislative intent to allow cities to grow into the population class but not to allow any cities to outgrow the class. Walker, 833 So.2d at 43. Ultimately, the court concluded that a general law containing a population class must allow for the inclusion and exclusion of members of the class based on changes in population.833 So.2d at 46. Thus, the court affirmed the trial court's summary judgment in favor of the city on the ground that it had outgrown the class specified in Act No. 457. Id.
The City argues that Walker is inapplicable in the present case. The City distinguishes Walker because the language of Act No. 2135 differs from the language in Act No. 457 in one material respect. Although the description of the population class in Act No. 2135 is identical to that in *Page 833 
Act No. 457 in that it, too, contains the language, "according to the last or any subsequent federal decennial census," § 2 of Act No. 2135 states that "[a]ny city coming under the provisions of Section 1 of this Act shall hereinafter have such authority as provided by law to enact zoning regulations" for the area described in Act No. 2135. (Emphasis added.) Thus, according to the City, Act No. 2135 clearly indicates the legislature's intent to permit those cities coming within its population class at the time it was enacted to forever have the power to zone in the described area.
The City also argues that Art. IV, § 106.01 of the Alabama Constitution of 1901 preserved Act No. 2135, as it did all general acts of local application that were not otherwise unconstitutional. See Freeman v. Purvis, 400 So.2d 389,391 (Ala. 1981). Section 106.01 reads:
 "Any statute that was otherwise valid and constitutional that was enacted before January 13, 1978, by the legislature of this state and was a general act of local application on a population basis, that applied only to a certain county or counties or a municipality or municipalities of this state, shall not be declared invalid or unconstitutional by any court of this state because it was not properly advertised in compliance with section 106 of this Constitution.
 "All such population based acts shall forever apply only to the county or counties or municipality or municipalities to which they applied on January 13, 1978, and no other, despite changes in population.
 "The population based acts referred to above shall only be amended by acts which are properly advertised and passed by the legislature in accordance with the provisions of this Constitution."
Thus, the City contends, Act No. 2135, which applied to the City in 1978, continues to apply to the City today, without regard to any population changes. Based on our previous discussions regarding the constitutionality of Act No. 2135, we agree that it continues to apply to the City by virtue of § 106.01.
Bradley Outdoor next argues that it was entitled to a judgment declaring that the moratorium was invalid because, in enacting the moratorium, the City failed to comply with the notice and hearing requirements of Ala. Code 1975, §§ 11-52-77 -78. However, the moratorium, by its terms, expired on December 7, 2001, when the new off-premise sign ordinance became effective. Thus, Bradley Outdoor's request that the trial court, and ultimately this court, declare the moratorium to be invalid was mooted by the expiration of the moratorium. See Case v.Alabama State Bar, 939 So.2d 881 (Ala. 2006) (holding that the dissolution of an order suspending the plaintiff from practicing law mooted his appeal, which was based upon the dismissal of his petition for declaratory and injunctive relief from that order); and Siegelman v. Alabama Ass'n of SchoolBds., 819 So.2d 568 (Ala. 2001) (holding that the entry of another injunction modifying the injunction forming the basis of the appeal mooted the appeal). An Alabama court "`is not empowered "`to decide moot questions. . . .'"'" Case,939 So.2d at 885 (quoting Ex parte Connors,855 So.2d 486, 488 (Ala. 2003), quoting in turn other cases). Accordingly, we will not address the validity of the moratorium.
Based on its argument that the moratorium was invalid, Bradley Outdoor requested that the trial court issue a writ of mandamus compelling Williamson, on behalf of the City, to issue a permit for the Bank Independent billboard, a permit which Williamson had denied on the sole *Page 834 
basis that the moratorium was in place. A petition for a writ of mandamus is the appropriate vehicle by which "to compel an official both to exercise his discretion and to exercise it under a proper interpretation of the applicable law." Ex parteChandler, 477 So.2d 360, 362 (Ala. 1985). However, mandamus will only lie in those instances where no adequate remedy at law exists. Ex parte Dep't of Human Res., 620 So.2d 619, 620
(Ala. 1993). An appeal is an adequate remedy at law. In reN.D.M., 837 So.2d 316, 318 (Ala.Giv.App. 2002). Because Bradley Outdoor could and did appeal the denial of the Bank Independent billboard permit application it sought from the City, and even though that appeal was, as noted earlier, untimely, mandamus will not lie to compel Williamson, on behalf of the City, to grant that permit. Accordingly, the trial court's summary judgment in favor of Williamson and the City on Bradley Outdoor's petition for a writ of mandamus is affirmed.
Bradley Outdoor and Askew appealed the trial court's summary judgment in favor of the Board. However, their brief fails to make any argument in support of the appeal of the summary judgment related to the appeal of the Board's affirmance of the denial of the various billboard permits.[1] The only arguments raised by Bradley Outdoor and Askew in their brief are those addressed above in conjunction with the declaratory-judgment/mandamus appeal. Issues not argued in an appellant's brief are waived. King v. Correctional Med.Servs., Inc., 919 So.2d 1186, 1190-91 (Ala.Civ.App. 2005). Therefore, we affirm the summary judgment in favor of the Board.
APPLICATION OVERRULED; OPINION OF JUNE 16, 2006, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK and BRYAN, JJ., dissent, without writing.
[1] The Board did discuss in its brief to this court the propriety of the summary judgment in its favor in the zoning action. In their reply brief, Bradley Outdoor and Askew, without developing an argument or citing any authority, in contravention of Rule 28(a)(10), Ala. R.App. P., state their disagreement with the Board's position and state that evidence in the record creates an issue of fact regarding the denial of the various permits requiring a trial on the merits. However, to the extent their statement may be taken as an argument on the issue, it comes too late because issues may not be raised on appeal for the first time in a reply brief. Lloyd Noland Hosp. v.Durham, 906 So.2d 157, 173 (Ala. 2005).